IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**MARIA DEL C. LORENZO,**
     **Plaintiff**

     **v.**

**JO ANNE B. BARNHART, Commissioner**
**of Social Security,**
     **Defendant**

**Civil No. 04-1781(HL)**

## MAGISTRATE-JUDGE'S REPORT AND RECOMMENDATION

Plaintiff María Del C. Lorenzo (hereafter "Lorenzo") filed a complaint seeking judicial review of the decision of the defendant, Jo Anne B. Barnhart, Commissioner of Social Security (Commissioner) denying her disability benefits pursuant to Title II of the Social Security Act (**Docket No. 1**). Lorenzo asks for judgment reversing the determination of the Commissioner and that benefits be allowed or that in the alternative, the matter be remanded for a hearing. The Commissioner answered the complaint and filed a memorandum of law in support of its decision (**Docket Nos. 7, 9**). Lorenzo was given a deadline of March 20, 2005, to file a memorandum of law in support of her claims. No memorandum was filed by the March 20th deadline and in order not to curtail the plaintiff's rights, the deadline was extended to May 30, 2005 (**Docket No. 12**). To date August 8, 2005; no memorandum of law has been filed on behalf of the plaintiff. The matter was referred to the undersigned for Report and Recommendation (**Docket No. 10**).

After careful review of the administrative record and the brief on file, it is hereby **RECOMMENDED** that the Commissioner's decision be **AFFIRMED** and that the plaintiff's case be **DISMISSED**.

## I.    Procedural Background

Lorenzo was born on December 31, 1951, has a sixth grade education and past relevant work as a sewing machine operator (Tr. 67, 91, 98, 103, 117). She filed the current application for disability insurance benefits on May 31, 2002, alleging an inability to work

since May 16, 2000, due to back pain, muscular spasms, bursitis, lumbosacral myositis, spurs and a nervous condition (Tr. 67, 80, 134).

Lorenzo's current application was denied initially (Tr. 40-47) and on reconsideration (Tr.49-54) by the Social Security Administration. She requested an administrative hearing on her application for disability benefits, which was held on September 23, 2003 (Tr. 28). Lorenzo testified at the hearing. A decision was issued on February 17, 2004, by Administrative Law Judge Miguel A. Montalvo (hereafter "ALJ") denying her benefits (Tr. 19-25). Lorenzo disagreed with the decision and filed a request for review of the ALJ's decision. However, the Appeals Council rejected her request and affirmed the ALJ's determination, rendering it the final decision of the Commissioner of Social Security (Tr.6-8). Lorenzo now challenges the Commissioner's decision (**Docket No. 1**).

## II.     The ALJ's Decision and the Appeals Council

In his written opinion dated February 17, 2004, the ALJ engaged in a review of the documentary evidence submitted and the testimony provided. In finding that Lorenzo was not suffering from a disability, the ALJ applied the evaluation process mandated by law. *See* Discussion Section, *Infra*. This evaluation process produced the following conclusions:

1) Lorenzo met the nondisability insured status requirements and was insured for benefits through December 31, 2000 (Tr. 24).

2) Lorenzo has not engaged in substantial gainful activity since the alleged onset date of disability (Tr. 24).

3) Claimant has an impairment or combination of impairments considered severe based on the requirements in 20 C.F.R. 404.1520(b). These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, of Regulation No. 4 (Tr.24).

4) Lorenzo's allegation regarding her limitations are not totally credible (Tr. 24).

5) Claimant retains the residual functional capacity to perform light work activity at least through December 31, 2000 (Tr.24).

6) Lorenzo's past relevant work as a machine operator did not require the performance of work related activities precluded by her residual functional capacity (Tr. 24).

> 7) Lorenzo's medically determinable mild central bulging disc at L5-S1, early cervical spondylosis and depressive disorder did not prevent her from performing her past relevant work at least through December 31, 2000 (Tr. 24).

> 8) Claimant was not under a "disability" as defined in the Social Security Act, at any time through December 31, 2000 (Tr. 24).

In reviewing the medical evidence of record, the ALJ found that same supports a finding that Lorenzo has a mild central bulging disc at the L5-S1 level, early cervical spondylosis and a depressive disorder (Tr. 21). The ALJ reviewed the medical records specifically noting that Lorenzo has been treated for her physical and emotional conditions by Dr. Evaristo Quiñones (hereafter "Dr. Quiñones"), and Dr. Ibzan Pérez (hereafter "Dr. Pérez"), psychiatrists (Tr. 21) at the San Germán Neurological Group. The ALJ further noted that the medical evidence of record through December 2000 is scanty. *Id.*

The record shows that Lorenzo received treatment from the State Insurance Fund for pain and an emotional condition in the form of medication and physical therapy, but never returned to work (Tr. 21). The ALJ referred to medical records wherein Lorenzo indicated that she stopped working because the factory she was working at had closed and because of her medical condition (Tr. 21).

Lorenzo received treatment by Dr. Quiñones given her complaints of cervical pain. Dr. Quiñones reported that Lorenzo's back pain was continuous (Tr. 21). The ALJ noted, however, that the record does not contain any objective medical studies performed on or before the date Lorenzo was last insured for medical benefits, December 31, 2000, and found that the record was devoid of medical evidence to support Dr. Quiñones' statement (Tr. 22). The ALJ also found that Lorenzo's conservative treatment was not consistent with either Dr. Quiñones' or Lorenzo's report of excruciating pain (Tr. 22).

With regard to Lorenzo's mental condition, the ALJ noted that she had been treated by Dr. Pérez since February 1999 (Tr. 22). In a statement dated June 28, 2002, Dr. Pérez opined that Lorenzo was then disabled due to the severity of her emotional condition (Tr. 22). The ALJ did not accept Dr. Pérez's opinion as to the severity of Lorenzo's condition noting first,

that it is not clear what time period  the statement refers to, and second that from the number of visits for treatment in the years 2000 through 2002, she appeared to be responding to the prescribed treatment (Tr. 22-23).  Further, the ALJ found that although Lorenzo's emotional condition was severe, it did not preclude the performance of substantial gainful activity (Tr. 22).

Finally, the ALJ reviewed Lorenzo's allegations regarding the existence of totally disabling symptoms, reviewed her testimony and compared the same with prior statements and other evidence finding Lorenzo not totally credible (Tr. 22-23).

With regard to Lorenzo's residual functional capacity, the ALJ determined that Lorenzo retained the ability to perform light work at least through December 31, 2000 (Tr. 23). The ALJ then explored Lorenzo's past relevant work as a sewing machine operator and based upon her residual functional capacity the ALJ concluded that she could have returned to her past relevant work as that occupation was generally performed in the national economy (Tr. 24). Accordingly, the ALJ found that Lorenzo was not disabled at any time through December 31, 2000. *Id.*

On February 26, 2004, Lorenzo  filed a request for the Appeals Council to review the ALJ's decision.   However,  the Appeals Council denied the request for review, so that  the ALJ's decision  became the final decision of the Commissioner of Social Security after remand by the Court.

**III.    Conclusions of Law**

  **A.    Legal Standard**

The Court's review is limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence. *Manso-Pizarro v. Secretary of Health and Human Services*, 76 F.3d 15, 16 (1st Cir. 1996). The ALJ's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts. *Nguyen v. Chater*,  172 F.3d 31, 35 (1st Cir. 1999); *Da Rosa v. Secretary of Health*

*and Human Services*, 803 F.2d 24, 26 (1st Cir. 1986); *Ortiz v. Secretary of Health and Human Services*, 955 F.2d 765, 769 (1st Cir.1991).

To establish entitlement to disability benefits, the burden is on the claimant to prove that she is disabled within the meaning of the Social Security Act. *See Bowen v. Yuckert*, 482 U.S. 137, 146-47, n. 5 (1987).  It is well settled law that a claimant is disabled under the Act if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months".  42 U.S.C. § 423(d)(1)(a).  A claimant is unable to engage in any substantial gainful activity when the claimant is not only unable to do her previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for her, or whether she would be hired if she applied for work.  42 U.S.C. § 423(d)(2)(a).

In making a determination as to whether a claimant is disabled, all of the evidence in the record must be considered.  20 C.F.R. § 404.1520(a).  A five-step sequential evaluation process must be applied to every case in making a final determination as to whether a claimant is disabled. 20 C.F.R.  §§ 404.1520; *See Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Goodermote v. Secretary of Health and Human Services*, 690 F.2d 5, 6-7 (1st Cir. 1982).

Through step one the ALJ determines whether the claimant is engaged in "substantial gainful activity."  If she is, disability benefits are denied. §§ 404.1520(b).  If she is not, the decision-maker proceeds to step two, through which the ALJ determines whether the claimant has a medically severe impairment or combination of impairments. *See* §§ 404.1520(c).  If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.  If the impairment or combination of impairments is severe, the evaluation proceeds to the third step, in order to determine whether the impairment or combination of

impairments is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. §§ 404.1520(d);  20 C.F.R. pt. 404, subpt. P, App. 1.  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step, through which the ALJ determines whether the impairment prevents the claimant from performing work she has performed in the past.  If the claimant is able to perform her previous work, she is not disabled. §§ 404.1520(e).  If the claimant cannot perform this work, the fifth and final step of the process demands a determination on  whether claimant is able to perform other work in the national economy in view of her residual functional capacity, as well as her age, education, and work experience.  The claimant is entitled to disability benefits only if she is not able to perform other work.  §§ 404.1520(f).

The claimant has the burden, under steps one through four, of proving that she cannot return to her former employment because of his alleged disability.  *Santiago v. Secretary of Health and Human Services*, 944 F.2d 1, 5 (1st Cir. 1991). Once a claimant has demonstrated a severe impairment that prohibits return to her previous employment, the Commissioner has the burden, under step five, to prove the existence of other jobs in the national economy that the claimant can perform.  *Ortíz v. Secretary of Health and Human Services*, 890 F.2d 520, 524 (1st Cir. 1989).

A "claimant is not entitled to disability benefits unless she can demonstrate that her disability existed prior to the expiration of her insured status." *Cruz- Rivera v. Secretary of Health and Human Services*, 818 F.2d 96, 97 ( 1st Cir. 1987). "It is not sufficient for a claimant to establish that her impairment had its roots before the date that her insured status expires.  Rather, the claimant must show that her impairment(s) reached a disabling level of severity by that date." *Moret-Rivera v. Secretary of Health and Human Services,* No. 93- 1700, 1994 WL 107870, at *5 (1st Cir. March 23, 1994) (citations omitted).  However, medical evidence generated after the claimant's insured status expires may be considered for what

light, if any, it sheds on the question of whether claimant's impairment(s) reached disabling severity before claimant's insured status expired. *Id.* (citations omitted).

### B.    Analysis

In the case at hand, the ALJ concluded at step four of the sequential evaluation process that Lorenzo retained the residual functional capacity to perform light work at least through December 31, 2000.  The ALJ further found that Lorenzo was not prevented from performing her past relevant work as a sewing machine operator.  Consequently, the ALJ found that Lorenzo was not disabled as defined in the Social Security Act, through the date she was last insured.

It is clearly established, that at step four of the sequential evaluation process, a claimant must be found not disabled if she retains the residual functional capacity to perform the actual functional demands and job duties of a particular past relevant job.  *See Santiago v. Secretary of Health and Human Services*, 944 F.2d 1, 5 (1st Cir. 1991).  In making such determination the ALJ should examine the demands and duties of the former job as the claimant actually performed it.  *Id.*  In this process, the claimant is the primary source for such information, and statements by the claimant regarding past work are generally sufficient for determining the skill level and exertional demands of such work.  *Id.*

A claimant will be found to be "not disabled" when it is determined that she retains the residual functional capacity to perform: 1) the actual functional demands and job duties of a particular past relevant job; or 2) the functional demands and job duties of the occupation as generally required by employers throughout the national economy.  *SSR 82-61 Titles II and XVI: Past Relevant Work – The Particular Job or the Occupation as Generally Performed*.

Lorenzo did not file a memorandum of law in support of her position.  Accordingly, the undersigned reviews the matter to determine if the  Commissioner's decision is supported by substantial evidence on the record as a whole.

### C.    Substantial Evidence

Courts are not to re-weigh the evidence or substitute their judgment for that of the

Commissioner when the record before the administrative agency has been comprehensive and thorough. *Colón v. Secretary of Health & Human Serv.*, 877 F.2d 148 (1st Cir. 1989). Here, the Court considers whether the decision of the ALJ is supported by substantial evidence. Substantial evidence has been defined as "more than a mere scintilla" and "such as a reasonable mind might accept as adequate to support a conclusion". *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Accordingly, judicial review of social security claims is limited to determining whether the ALJ used proper legal standards and found facts upon the proper quantum of evidence. *Ward v. Commissioner*, 211 F.3d 652, 655 (1st Cir. 2000).

The ALJ determined that Lorenzo could perform light work.  Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  20 C.F.R. § 404.1567(b).

The administrative record contains both mental and a physical residual functional capacity assessments.  In *Berrios López v. Secretary of Health and Human Services*, 951 F.2d 427, 431 (1st Cir. 1991), the First Circuit found the reports of two non-examining, non-testifying physicians to constitute substantial evidence of the ALJ's finding regarding claimant's residual functional capacity because the: 1) reports contained written comments and medical conclusions rather than just "the mere checking of boxes denoting levels of residual functional capacity," 2) reports were consistent with each other and, 3) the physicians had available to them most, although not all, of the medical evidence for their review.  In the case at bar the administrative record contains such evidence.

The record contains a Mental Residual Functional Capacity Assessment evaluating Lorenzo through the date she was last insured in December, 2000 (Tr. 184).  The Mental Residual Functional Capacity Assessment( hereafter "Mental RFC") was prepared on August

14, 2002 (Tr. 184-186).   In the same it was concluded that with regard to Lorenzo's understanding and memory, she was not significantly limited in her ability to remember locations and work-like procedures and in her ability to understand and remember short instructions, but that she was moderately limited in her ability to understand and remember detailed instructions (Tr. 184).

With regard to plaintiff's concentration and persistence, through the Mental RFC it was concluded that she was not significantly limited in her ability to carry out very short and simple instructions, to sustain an ordinary routine without special supervision, to work in coordination with or proximity to others without being distracted by them, and to make simple work-related decisions (Tr. 184).  The Mental FRC reflected Lorenzo was moderately limited in her ability to carry out detailed instructions, to maintain attention and concentration for extended periods, to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances and  and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a constant pace without an unreasonable number and length of rest periods (Tr. 184-85).

With regard to Lorenzo's social interaction, the Mental RFC noted that she is moderately limited in her ability to interact appropriately with the general public, and to accept instructions and respond appropriately to criticism from supervisors.  The Mental RFC found that she was not significantly limited in her ability to ask simple questions or request assistance; to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and to  maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness (Tr. 185).   Finally, with regard to plaintiff's adaption, the Mental RFC reflected that Lorenzo is not significantly  limited in her ability to respond appropriately to changes in the work setting; to travel in unfamiliar places or use public transportation; set realistic goals or make plans independent of others and in her ability to be aware of normal hazards and take appropriate precautions. (Tr. 185).

The Mental RFC specifically noted that Lorenzo shows depression with anhedonia and diminished concentration and memory (Tr. 186).  She is able to remember and carry out simple instructions but not complex ones.  *Id*.  She can sustain attention for two hour intervals and complete simple tasks.  *Id*.  Also, she can relate to supervisors and to the public. *Id.*  The assessment was affirmed as written by Clinical Psychologist, Luis Umpierre (Tr. 199)

A Psychiatric Review Technique Report was also prepared (Tr. 187-200).  It contained a finding of a 12.04 affective disorder with the presence of anhedonia or pervasive loss of interest in almost all activities, sleep disturbance, decreased energy, feelings of guilt or worthlessness and difficulty concentrating or thinking (Tr. 190).  Lorenzo was found to have a moderate degree of limitation in restriction of activities of daily living, in maintaining social functioning, and in maintaining concentration, persistence or pace (Tr. 197).  There were no episodes of decompensation of extended duration.  *Id*.

The Record also contains a Physical Residual Functional Capacity Assessment (hereafter "Physical RFC")  completed by Dr. Lorena Díaz Trancon (hereafter "Dr. Díaz") on September 10, 2002, (Tr. 202-209).  The assessment extends  through the date Lorenzo was last insured, December 2000 (Tr. 202).  The primary diagnosis is bulging L5-S1 and chronic lumbosacral myositis.  *Id.*  It was determined that Lorenzo could occasionally lift 50 pounds and frequently lift 25 pounds (Tr.203).  Also, that Lorenzo could stand and/or walk about 6 hours in an 8-hour day and sit about 6 hours in an 8-hour day (Tr. 203).  Dr. Díaz found Lorenzo unlimited in her pushing and/or pulling (Tr. 203).    Dr. Díaz noted that there was a history of lumbosacral pain, spondylosis, bulging L5-S1 disc, and pain in the neck, back and arms (Tr. 203).  There were some postural limitations, but no manipulative, visual, communicative or environmental limitations  (Tr. 204-206).  The assessment was affirmed as written by Dr. José Pesquera-García (Tr.209).

The record also contains a mental residual functional capacity assessment dated August 8, 2003, finding marked limitations in Lorenzo's mental residual functional capacity (Tr. 238-243).  However, it is not limited in time, and Lorenzo was last insured December 31, 2000.

In the same vein the record also contains a second physical residual functional capacity assessment finding more limitations than in the one conducted by Dr. Díaz (Tr. 270-273). This assessment was prepared on October 11, 2003, and also is not limited to the date that Lorenzo was last insured.

Lorenzo also had complaints of pain.  When a claimant alleges disability due to pain, in assessing the claimant's residual functional capacity, the ALJ must first determine whether the claimant has a medically determinable impairment that is reasonably likely to produce the pain claimed. 20 C.F.R. § 404.1529(a) and (b); *Nguyen v. Chater*, 172 F.3d 31, 34 (1st Cir. 1999). If so, the ALJ must assess the severity of the pain and the extent to which pain impedes the claimant's ability to work by considering all of the pertinent evidence of record including "claimant's statements, opinions of treating physicians, reports of claimant's activities and claimant's course of treatment." *Id., see also Daresay v. Secretary of Heath and Human Servs*., 803 F.2d 24, 25-26 (1st Cir. 1986). "[C]omplaints of pain need not be precisely corroborated by objective findings, but they must be consistent with medical findings." *Dupuis v. Secretary of Health and Human Servs*., 869 F.2d 622, 623 (1st Cir.1989).

Additionally, when a claimant complains that pain or other subjective symptoms are a significant factor limiting the ability to work, and those complaints are not fully supported by medical evidence contained in the record, the ALJ must undertake further exploration of other information.  *Avery v. Secretary of Health and Human Servs.,* 797 F.2d 19, 23 (1st Cir.1986). The ALJ must consider (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication that the claimant takes or has taken to alleviate her pain; (5) treatment, other than medication, the claimant receives or has received for relief of her pain; (6) any measures the claimant uses or has used to relieve pain; and (7) other factors concerning the claimant's limitations and restrictions due to pain. *20 C.F.R. § 404.1529(c)(3); See Avery v. Secretary of Health and Human Servs.,* 797 F.2d 19, 29-30 (1st Cir.1986); SSR 88-13.  In addition to considering the foregoing factors, the ALJ is

entitled to observe the claimant, evaluate his demeanor, and consider how the claimant's testimony fits with the rest of the evidence. *See Frustaglia v. Secretary of Health and Human Servs.*, 829 F.2d 192, 195 (1st Cir.1987).

In the case at bar the ALJ appropriately considered Lorenzo's complaints of pain.  Also he had an opportunity to see and observe her at the hearing held on September 23, 2003. At that time he questioned her regarding her pain, how it affected her, and the treatment she receives for the same.  Significantly, Lorenzo testified that when she takes medication the pain is alleviated (Tr. 34).

More so, the record reflects that ALJ appropriately considered Lorenzo's physical and mental impairments. Both the Social Security statute, 42 U.S.C. § 423(d)(2)(C), and the Commissioner's regulations, 20 C.F.R. § 404.1523; require the Commissioner to "consider the combined effect of all the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity."  It is evident from reading the ALJ's decision that he considered the combined effect of  Lorenzo's physical and mental impairments.   The record clearly evinces that the ALJ discussed in detail her physical impairments as well as her mental impairments, citing to specific portions of the record.

In the case at bar the ALJ used the correct legal stands and relied upon the evidence submitted in the record.  After examining the record as a whole, the undersigned determines that the decision of the Commissioner is supported by substantial evidence.

## IV.     Conclusion

For the reasons stated above, this Magistrate-Judge, having scrutinized the record and completed an independent assessment of the evidence, finds that the decision of the ALJ is supported by substantial evidence. As such, it is **RECOMMENDED** that the ALJ's decision be **AFFIRMED**  and  the plaintiff's case be **DISMISSED**

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(a) of the Local Rules of Court.  Any objections to the same must be specific and must be filed with the Clerk of Court **within ten (10) days** of notice.  Rule 72(d), Local Rules of

Court; Fed. R. Civ. P. 72(b).  Failure to timely file specific objections to the Report and Recommendation waives the right to review by the District Court, and waives the right to appeal the District Court's order.  *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986*); Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603 (1st Cir. 1980).  The parties are advised that review of a Magistrate-Judge's Report and Recommendation by a District Judge does not necessarily confer entitlement as of right to a *de novo* hearing and does not permit consideration of issues not raised before the Magistrate-Judge.  *Paterson-Leitch v. Massachusetts Elec.*, 840 F.2d 985 (1st Cir. 1988).

**SO RECOMMENDED**.

At San Juan, Puerto Rico, on this 9th day of August, 2005.

**S/AIDA M. DELGADO-COLON**
**U.S. Magistrate-Judge**